

IT IS SO ORDERED.
Signed June 30, 2014

Arthur S. Weissbrodt
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 12-57109-ASW |
| KENNETH BLACKWELL, | Chapter 13 |
| Debtor, | |
| In re | Case No. 12-57115-ASW |
| KATHLEEN BLACKWELL, | Chapter 13 |
| Debtor. | Hearing Date: Mar. 18, 2014<br>Hearing Time: 2:15 p.m. |

**MEMORANDUM DECISION RE: ELIGIBILITY**

This matter is before the Court on this Court's Orders Directing Briefing on Chapter 13 Eligibility ("Briefing Orders"). Debtors Kenneth and Kathleen Blackwell ("Debtors") are represented by attorney Cathleen Cooper Moran in their respective chapter 13 cases. The chapter 13 trustee, Devin Derham-Burk, is represented by attorney Nanette Dumas.

In the Briefing Orders, this Court raised the question of whether Debtors are eligible to be debtors under chapter 13 due to their debts exceeding the eligibility limits of 11 U.S.C. § 109(e), and gave the parties an opportunity to brief the issue.

The Court has considered the briefs filed by the parties, other relevant documents filed in this case, and the arguments of the parties. For the reasons set forth below, the Court finds that Debtors are not eligible for chapter 13 relief.

## I. FACTS

Debtors filed a joint chapter 13 petition on February 28, 2011 (11-51826-SLJ). In that case, Debtors listed secured debts of $2,442,933. The case was converted to chapter 7 on May 31, 2011 on the chapter 13 trustee's motion, which was brought on eligibility grounds. Debtors received a chapter 7 discharge on September 13, 2011, and the case was closed. A few days later, October 7, 2011, Debtors filed a second joint chapter 13 case (11-59395-SLJ), listing their residence at 505 Gordon Avenue, San Jose, California (the "Property") as a community asset worth $1.8 million. Schedule D filed in that case listed two secured obligations encumbering the Property, one to Chase Home Mortgage ("Chase") for $2.4 million, and the other to "Tech Credit Union" for $416,000. After the chapter 13 trustee filed an objection to confirmation raising the eligibility issue, Debtors moved to bifurcate the case. That motion was denied, and the case was dismissed on eligibility grounds on August 13, 2012.

A few weeks later, on September 28, 2012, Debtors filed the instant chapter 13 cases. Debtors' respective schedules and exemptions are identical in both cases. The Property is listed on each Schedule A as owned in joint tenancy with a total value of

$1,500,000,[1] of which $750,000 is listed as the current value of each Debtor's interest.  Each Schedule D lists the debt to Chase with a total balance of $1,984,000, but lists as the amount of Chase's claim only half the debt ($992,000).  Each Schedule D also lists a junior lien against the Property held by Technology Credit Union, with a full loan amount of $416,000, "claim amount" of $208,000, and a secured value of $0.

## II. ISSUE

Whether Debtors' debts exceed the statutory debt limits for chapter 13 eligibility.

## III. ANALYSIS

### A. Determining Eligibility

Under the version of § 109(e) in effect on the petition date of September 28, 2012, "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400 . . . may be a debtor under chapter 13 of this title."[2]  Eligibility debt limits are strictly construed.  In re Soderlund, 236 B.R. 271, 274 (9th Cir. BAP 1999).

Ordinarily, chapter 13 eligibility is determined by reference to a debtor's originally filed schedules, checking only to see if

---

[1] The chapter 13 trustee questions Debtors' valuation of the Property.  However, for purposes of this decision only, the Court will use Debtors' valuation.

[2] These debt limits were increased to $383,175 (unsecured) and $1,149,525 (secured) on April 1, 2013.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

the schedules were made in good faith. <u>In re Scovis</u>, 249 F.3d 975, 982 (9th Cir. 2001).

Applying these principles to the instant case, Debtors have each listed a one-half interest in the Property as an asset on their respective schedules. The schedules indicate that Debtors own the property as joint tenants.[3] As such, Debtors may each list an undivided one-half interest in the joint tenancy in their bankruptcy schedules. <u>See</u> <u>In re Summers</u>, 332 F.3d 1240, 1243 (9th Cir. 2003) (under California law, community property presumption is rebutted when married couple acquires property from a third party as joint tenants); <u>see also</u> <u>In re Reed</u>, 89 B.R. 100, 105 (Bankr. C.D. Cal. 1988), <u>aff'd</u>, 940 F.2d 1317 (9th Cir. 1991) (only 50% of a debtor's joint tenancy interest is property of the estate).

Each Debtor also listed on Schedule D the obligation to Chase, showing in the Description column "Full loan amount of $1,984,000 and full arrears of $335,374." However, in the column labeled "Amount of Claim Without Deducting Value of Collateral" the claim amount is listed as $992,000, or one-half of $1,984,000. The promissory note for this debt, which is attached to Debtors' complaints filed in the adversary proceedings, states in paragraph 9 that <u>each</u> of the note's signers (<u>i.e.</u>, each of the two Debtors) promises to pay the full amount owed on the note. Thus, each Debtor is fully liable on the note. <u>See</u> <u>In re Cronkleton</u>, 18 B.R. 792, 793 (Bankr. S.D. Ohio 1982) (co-makers of a note cannot split

---

[3]The Court notes that in case no. 11-59395, Debtors listed the Property as community property (despite having listed the Property as owned in joint tenancy in their first case). Debtors have not provided any explanation for this discrepancy, but, as it is not material to the result here, the Court need not address it.

the obligation to qualify under the debt limitation ceiling of § 109(e)

However, this does not end the inquiry. Debtors argue that, because their personal liability under the note was discharged in their prior chapter 7 proceeding, the secured debt to Chase must be measured by the value of the collateral, which in each case would be $750,000. Debtors also argue that the chapter 7 discharge means that there is no unsecured portion on the obligations to either lienholder to be counted against the unsecured debt limitation.

## B. **Effect of Prior Chapter 7 Discharge**

In <u>Johnson v. Home State Bank,</u> 501 U.S. 78 (1991), the Supreme Court held that even after a debtor's personal liability has been discharged in a chapter 7 proceeding, a mortgage lien remains a "claim"[4] in a chapter 13 case that may be provided for in the plan. "[A] mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5)." <u>Johnson</u>, 501 U.S. at 84. The Supreme Court reasoned that even after a debtor's personal liability has been extinguished, the lender retains the "right to payment" in the form of its right to the proceeds from the sale of the collateral. Alternatively, the

---

[4]The term "claim" is defined in the Bankruptcy Code as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

lender's surviving right to foreclose can be viewed as a "right to an equitable remedy" within the definition of "claim." Id. The Supreme Court analogized the mortgage interest that passes through a chapter 7 liquidation to a nonrecourse loan. Id. at 86.

In its opinion, the Supreme Court noted that the term "debt" – which is defined as "liability on a claim" under § 101(12) – has a meaning coextensive with that of "claim" as defined in § 101(5). Id. at 84 n.5 (citing Pennsylvania Dep't of Public Welfare v. Davenport, 495 U.S. 552, 558 (1990)).

Johnson is not an eligibility case and for that reason is arguably distinguishable from the case at bench. However, the language is very broad in terms of how a court determines whether a creditor has a claim (and thus debtor has a debt) after personal liability has been discharged in a chapter 7 case. In Johnson, the debtor defaulted on notes secured by a mortgage on farm property. When the creditor bank initiated foreclosure, the debtor filed for chapter 7 relief and received a discharge. The bank obtained relief from stay in the chapter 7, reinitiated the foreclosure, and obtained from the state court an in rem judgment of $200,000. Before the foreclosure sale could occur, the debtor filed a chapter 13 petition and listed the debt to the bank in his chapter 13 plan. The bank objected to confirmation, arguing that debtor could not include that debt in the plan because debtor's personal liability had been extinguished in the chapter 7. The bankruptcy court overruled the objection. The district court reversed, but on different grounds; the Court of Appeals for the Tenth Circuit affirmed. The Supreme Court took the appeal to resolve a conflict among circuits and reversed, holding that a mortgage lien remains a

claim against the debtor that may be "rescheduled" in a chapter 13 case, notwithstanding discharge of the debtor's personal liability in a previous chapter 7 case.

The issue before the Supreme Court was whether a mortgage lien that secures an obligation for which a debtor's personal liability has been discharged in a chapter 7 liquidation is a "claim" subject to inclusion in a chapter 13 reorganization plan. The Supreme Court resolved the issue by examining the nature of a mortgage interest that survives a chapter 7 bankruptcy:

> A mortgage is an interest in real property that secures a creditor's right to repayment. But unless the debtor and creditor have provided otherwise, the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's in personam liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally. See 3 R. Powell, The Law of Real Property ¶ 467 (1990). A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. See 11 U.S.C. § 727. However, such a discharge extinguishes only "the personal liability of the debtor." 11 U.S.C. § 524(a)(1). Codifying the rule of Long v. Bullard, 117 U.S. 617, 6 S.Ct. 917, 29 L. Ed. 1004 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy. See 11 U.S.C. § 522(c)(2); Owen v. Owen, 500 U.S. 305, 308-309, 111 S. Ct. 1833, 1835-1836, 114 L.Ed.2d 350 (1991); Farrey v. Sanderfoot, 500 U.S. 291, 297, 111 S. Ct. 1825, 1829, 114 L. Ed.2d 337 (1991); H.R.Rep. No. 95-595, supra, at 361.
>
> Whether this surviving mortgage interest is a "claim" subject to inclusion in a Chapter 13 reorganization plan is a straightforward issue of statutory construction to be resolved by reference to "the text, history, and purpose" of the Bankruptcy Code. Farrey v. Sanderfoot, supra, at 298, 111 S. Ct., at 1830.

501 U.S. at 82-83.

The Supreme Court then quoted the definition of "claim" under the Bankruptcy Code:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

§ 101(5). The Supreme Court concluded that Congress intended to adopt the broadest possible definition of "claim" and that under this definition, a mortgage interest that survives the discharge of a debtor's personal liability is a "claim" within the definition of § 101(5):

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

Johnson, 501 U.S. at 84.

The Supreme Court observed that the discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor in personam, while leaving intact an action against the debtor in rem. Id. at 85. The Supreme Court then went on to observe that the conclusion that a surviving mortgage interest is a claim is consistent with other provisions of the Code. For example, § 502(b)(1) states that the bankruptcy court shall determine the amount of a claim and shall allow such claim in such amount except to the extent that such claim is unenforceable against the debtor <u>and property of the debtor</u>.

> In other words, the court must allow the claim if it is enforceable against <u>either</u> the debtor <u>or</u> his property. Thus, § 502(b)(1) contemplates circumstances in which a 'claim,' like the mortgage lien that passes through a

Chapter 7 proceeding, may consist of nothing more than an obligation enforceable against the debtor's property."

501 U.S. at 85 (emphasis in original). The Supreme Court also noted that § 102(2) defines 'claim against the debtor' as including a claim against property of the debtor. Finally, the Supreme Court concluded that the legislative history of the Code confirms this construction of the term "claim." Id. at 85-86.

Accordingly, the Supreme Court's opinion appears to foreclose any argument that because the claim cannot be enforced against the debtor personally, it does not count toward the eligibility requirements. Under Johnson, if, as of the petition date, the claim is enforceable against either debtor <u>or property of the debtor</u>, it should be included in the eligibility calculation. At some point later in the case, there may be valuation hearings that will result in the bifurcation of the claim – but as of the petition date (and for eligibility purposes), the entire claim has to be scheduled. This also is the holding of In re Quintana, 107 B.R. 234 (9th Cir. BAP 1989), aff'd, 915 F.2d 513 (9th Cir. 1990), In re Scotto-DiClemente, 463 B.R. 308 (Bankr. D.N.J. 2012), and other cases cited infra in this Memorandum Decision.

The Ninth Circuit Bankruptcy Appellate Panel held in a chapter 12 case that, although § 109(e) refers to "debts" rather than "claims," this is a distinction without a difference. See Quintana, 107 B.R. at 237 ("To the extent that a creditor has a claim against the debtor, the debtor owes a debt to the creditor."); Scotto-DiClemente, 463 B.R. at 314 (rejecting debtor's argument that court erred by focusing on "claims" because § 109(e) refers to "debts"); In re Branam, 476 B.R. 333, 338-39 (Bankr. S.D. Fla. 2012) (same).

In Quintana, the Ninth Circuit Bankruptcy Appellate Panel held that, despite waiver of a deficiency judgment, a lender's entire claim had to be counted for purposes of chapter 12 eligibility. 107 B.R. at 239. The Panel reasoned that under § 102(2), "claim against the debtor" includes a claim against property of the debtor. According to the statute's legislative history, § 102(2) is intended to cover nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally. Id., citing H.R. Rep. No. 95-595, at 315; S. Rep. No. 95-989, at 28 (1978), reprinted in 1978 U.S.C.C.A.N. 5814, 6272. As a result, the obligation was a debt of the debtors defined by the amount of the claim against the collateral.

> [The secured creditor's] claim against the property is approximately $1.528 million [the full amount of the obligation] because it has the right to payment of that amount from the property or from the proceeds of the sale of the property. Although, as a practical matter, [secured creditor] will only be able to collect the value of the property, it has the right to payment of the entire obligation if under some circumstance, the property is sold for more than its present value.

Quintana, 107 B.R. at 239. The debt at issue here is analogous to a nonrecourse debt, see Johnson, 501 U.S. at 86. As such, under the cited cases, the entire amount of the debt must be counted for eligibility purposes.[5]

---

[5] If the Property were not Debtors' principal residence, there would be policy arguments supporting Debtors' position that the unsecured portions of their debts to Chase and Technology Credit Union should not count for eligibility purposes. Debtors would not have to deal with the unsecured portion of those debts, i.e., Debtors would not have to pay those debts in these chapter 13 cases. These chapter 13 cases would not fail because Debtors could not pay those debts. These chapter 13 cases would not be made more difficult or complicated or vulnerable because of the unsecured debts to Chase and Technology Credit Union. However, those policy

Even if <u>Johnson</u> were distinguishable and not dispositive here, Debtors could still not prevail because of § 1322(b)(2). Chase's lien is in first priority on Debtors' principal residence. As such, § 1322(b)(2) comes into play and eliminates the possibility of modifying the lien in any respect for the following reasons.

**C. <u>Impact of § 1322(b)(2)</u>**

In most instances, the unsecured portion of undersecured debt, as determined by a § 506(a) analysis, is counted as unsecured for § 109(e) eligibility purposes. <u>Scovis</u>, 249 F.3d at 983. However, § 1322(b)(2) prohibits a chapter 13 debtor from reducing an undersecured homestead mortgage to the fair market value of the mortgaged residence. <u>See</u> <u>Nobelman v. Am. Sav. Bank</u>, 508 U.S. 324 (1993). This rule has been applied by several California bankruptcy courts in determining chapter 13 eligibility. <u>See</u> <u>In re Smith</u>, 419 B.R. 826 (Bankr. C.D. Cal. 2009), <u>aff'd in part</u>, 435 B.R 637 (9th Cir. BAP 2010))[6]; <u>In re Tolentino</u>, 2010 WL 1462772 (Bankr. N.D. Cal. Apr. 12, 2010); <u>In re Silva</u>, 2011 WL 5593040 (Bankr. N.D. Cal. Nov. 16, 2011). In those cases, the issue was whether the undersecured portion of an obligation secured by the debtors' principal residence should be counted as unsecured debt for purposes of chapter 13 eligibility. Those courts ruled that, pursuant to <u>Nobelman</u>, the undersecured liens could not be

---

arguments could not overcome <u>Johnson</u> and the other cases cited in this Memorandum Decision.

[6] In <u>Smith</u>, the BAP opinion affirmed the portion of the bankruptcy court's ruling that a wholly unsecured junior lien on debtor's primary residence had to be treated as unsecured for eligibility purposes.

bifurcated, and therefore any "undersecured" debt would nonetheless be treated as secured debt. See Smith, 419 B.R. at 832.[7]

Several courts have similarly construed Nobelman in the context of plan confirmation. See, e.g., Parker v. Federal Home Loan Mortgage Corp., 179 B.R. 492, 495 (E.D. La. 1995) (rejecting argument that prior chapter 7 discharge of chapter 13 debtor's personal liability on loan secured by principal residence permitted debtor to bifurcate claim); In re Dydo, 163 B.R. 663 (Bankr. D. Conn. 1994) (prohibition against modification of rights of creditor whose claim is secured by chapter 13 debtor's principal residence

---

[7]Some courts have reached this conclusion without consideration of § 1322(b)(2). See Branam, 476 B.R. at 338-39 (in rem claim against a debtor's property is a valid debt in a chapter 13 proceeding and included in the § 109(e) eligibility calculation even if debtor's personal liability has been discharged, citing Scotto-DiClemente, 463 B.R. at 313-14). While this Court is not convinced that Johnson compels the rulings in Branam and Scotto-DiClemente, those cases are not essential to this Court's conclusion – which is based primarily on the impact of § 1322(b)(2).

In Tolentino, Chief Judge Jaroslovsky noted that California state law provides a "more compelling reason" for not permitting the undersecured portion of a lien on debtors' principal residence to be bifurcated. Under Cal. Civ. Pro. Code § 580b, a deed of trust given to secure a purchase money loan secured by a personal residence is entirely without recourse. "[T]here is no rational basis for calling any portion of the claim unsecured when applicable law forbids the debt from being enforced any way except as secured. Deficiency claims are only allowed in bankruptcy to the extent that state law permits them." Tolentino, 2010 WL 1462772, at *1 (citing Tidewater Finance Co. v. Kenney, 531 F.3d 312, 320 (4th Cir. 2008)).

In their reply brief, Debtors argue that there is no evidence the lien in question secures a purchase money loan. However, Debtors do not assert the obligation to Chase was not a purchase money loan. Resolution of this issue is not material to the Court's ruling and thus need not be addressed.

applies even if debtor has no personal liability); In re Gelletich, 167 B.R. 370 (Bankr. E.D. Pa. 1994).

Debtors cite In re Shenas, 2011 WL 3236182 (Bankr. N.D. Cal. Jul. 28, 2011), as contrary authority. In that case, chapter 13 debtors who had previously received a chapter 7 discharge sought to strip off a wholly unsecured junior lien against their primary residence. The creditor argued that treating its claim as unsecured rendered debtors ineligible for relief because debtors' unsecured claims would then exceed the § 109(e) limitation. The court disagreed, ruling that because the debt was unenforceable against the debtors, the debt was not allowable as an unsecured claim and, as such, would not be counted toward the § 109(e) unsecured debt limitation. 2011 WL 3236182, at *1. The bankruptcy court cited similar rulings in Cavaliere v. Sapir, 208 B.R. 784, 787 (D. Conn. 1997), and In re Osborne, 323 B.R. 489 (Bankr. D. Or. 2005) (addressing chapter 12 eligibility). However, neither Shenas nor Cavaliere involved the impact of the antimodification provision of § 1322(b)(2). Shenas involved a wholly unsecured junior lien and did not even cite Johnson. The court in Cavaliere cited Johnson but did not analyze its holding that a chapter 7 discharge does not eliminate a debt, and did not address § 1322(b)(2) at all. Osborne is a chapter 12 case and did not address either Johnson or § 1322(b)(2). Therefore, the Court finds these cases inapposite to the issue before it.

Debtors further argue that there is no necessity for characterizing a claim on a principal residence the same way for both confirmation and eligibility. However, this argument misses the point – that eligibility is to be determined by looking at the

debtor's schedules, <u>Scovis</u>, 249 F.3d at 982.  The Court may also consider other evidence in determining the amount of a debt, but should not engage in an extensive evidentiary hearing.  <u>See</u> <u>In re Slack</u>, 187 F.3d 1070, 1073-74 (9th Cir. 1999) (whether a debt is liquidated for purposes of chapter 13 eligibility turns on whether the amount of the debt is subject to ready determination).  Here, it is readily determinable from the schedules and the promissory note that Debtors jointly owe $1,984,000.  It is also readily determinable that the obligation is partially secured by Debtors' principal residence and thus Debtors cannot modify the claim. Accordingly, the entire amount of the debt must be counted as secured for purposes of eligibility.

## IV. CONCLUSION

As noted, Debtors have listed the obligation to Chase on Schedule D in the total amount of $1,984,000.  Because the $1,984,000 may not be bifurcated into secured and unsecured portions, the entire $1,984,000 counts as a secured debt as to both Debtors.  Accordingly, Debtors are not eligible to be chapter 13 debtors, as their secured debts exceed $1,081,400.

Both main bankruptcy cases shall be dismissed with a 70-day stay to give Debtors the opportunity to move to convert to chapter 11.

**\*\*\* END OF MEMORANDUM DECISION \*\*\***

**Court Service List**

All parties to be notified electronically